ORIGINAL

NORTHERN DISTRICT OF TEXAS

**FILED**

AUG 3 1 2015

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

PATRICIA B. BEGGS,               §
    PLAINTIFF,                    §
                                     §
VS.                              §
                                       §   **CIVIL ACTION NO. 4:14-CV-129-O**
CAROLYN W. COLVIN,               §
ACTING COMMISIONER OF            §
SOCIAL SECURITY,                 §
    DEFENDANT.                    §

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

Plaintiff Patricia B. Beggs ("Beggs") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In October 2012, Beggs protectively applied for disability insurance benefits, alleging that she became disabled on July 1, 2012. (Transcript ("Tr.") 20, 167–69.) In November 2012,[1] Beggs protectively applied for SSI, alleging the same July 1, 2012 onset date. (Tr. 161–66.) After her applications for benefits were denied both initially and on

---

[1] The ALJ erroneously cites the filing date as October 1, 2012 for both applications.

reconsideration, Beggs requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 20, 90–107.) After a hearing, held on July 26, 2013, during which Beggs amended her alleged onset date to December 20, 2012, the ALJ issued an unfavorable decision on September 24, 2013. (Tr. 20–26, 31-55.) On December 31, 2013, the Appeals Council denied Beggs' request for review, leaving the ALJ's decision as the final decision of the Commissioner of her case. (Tr. 1–6.) Beggs subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.* of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial or gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d

2

1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At Steps One through Four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla of evidence, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the

record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[2]

## III.   ISSUES

In her brief, Beggs presents the following issues:

A. Whether the ALJ's determination that Beggs does not suffer any severe impairments is supported by substantial evidence;

B. Whether the ALJ breached his duty to develop the record; and

C. Whether the ALJ's credibility findings are supported by substantial evidence.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 10–21.)

## IV.   ADMINISTRATIVE RECORD

In his September 24, 2013 decision, the ALJ found that Beggs had met the insured status requirements of the SSA through June 30, 2015 and had not engaged in substantial gainful activity since July 1, 2012. (Tr. 22.) At Step Two of his analysis, the ALJ found that the medical evidence of record established Beggs had the medically determinable impairments of cervical cancer and tumor. (Tr. 22.) However, the ALJ ultimately found that Beggs "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments." (Tr. 23 (citations omitted) (emphasis omitted).) Consequently, the ALJ concluded that Beggs was not disabled. (Tr. 26.)

---

[2] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

## V.    DISCUSSION

### A.    Step Two Determination

Beggs complains that the ALJ's determination at Step Two that Beggs does not suffer from a severe impairment or combination of impairments is unsupported by substantial evidence. (Pl.'s Br. at 10–17.)   Specifically, Beggs argues that the ALJ "misread and misapplied" the Social Security Administration regulations' durational requirement by neglecting to address whether Beggs' impairment could be *expected* to last twelve months.   (Pl.'s Br. at 10–12.) Beggs maintains that the ALJ mischaracterized the evidence by focusing too narrowly on doctor treatment notes indicating that she was doing "well," while ignoring other evidence in the record indicating she was "experiencing debilitating side effects from her chemoradiation therapy, including the inability to sleep due to pain, a prescription for hydrocodone, experiencing fatigue and diarrhea, her inability to bathe herself or care for her children without the assistance of a roommate, the inability to play with her children without experiencing pain, the inability to walk without pain, her hospitalization on March 5, 2013 following chemoradiation treatment, and dizziness which resulted in her falling down stairs and injuring her right knee." (Pl.'s Br. 12– 14.)   Beggs argues that the ALJ failed to weigh the opinions of her treating physician as stated in two residual functional capacity ("RFC") questionnaires that show "her disease would continue to limit her for months."   (Pl.'s Br. at 13; *see also* Pl.'s Br. at 10, 14.)   In addition, Beggs complains that the ALJ failed to consider at Step Two her diagnoses of obesity and a right knee impairment. (Pl.'s Br. at 14–17.)

### 1.    Durational Requirement

Beggs argues that the ALJ erred in his analysis of whether Beggs' impairment met the durational requirement.   (Pl.'s Br. at 10–12.)   Specifically, Beggs maintains, as stated above, that the ALJ misread and misapplied the Social Security duration requirement that states, as relevant

here, that an impairment can only be considered "severe" if it "ha[s] lasted or *must be expected* to last for a continuous period of at least 12 months." (Pl.'s Br. at 10, citing 20 C.F.R. §§ 404.1509, 416.909 (emphasis in original).) Beggs contends that the ALJ's "sole basis for rejecting Plaintiff's SSI and [disability insurance benefits] applications was a failure to meet the duration requirement." (Pl.'s Br. at 11.) Beggs claims that the ALJ erred by focusing too narrowly on whether Beggs suffered from a severe impairment or combination of impairments during the period from July 1, 2012 through July 1, 2013, while improperly failing to consider Beggs' future prognosis and whether Beggs' "cervical cancer could be *expected* to last 12 months." (Pl.'s Br. at 11 (emphasis in original) (citations omitted).)

To establish disability as to a particular impairment, the claimant is required to show an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. 423(d)(1)(A). At Step Two, the ALJ was tasked with determining whether Beggs had a severe impairment or combination of impairments. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone*, 752 F.2d at 1101. Such an inquiry, involves two separate inquiries, a severity requirement and a duration requirement. *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986). "To meet the duration requirement, a claimant 'need only show that an alleged impairment has lasted or can be expected to last for the 12 month period[.]'" *Berset v. Astrue*, No. 5:11-CV-00194-BG, 2012 WL 3578597, at *6 (N.D. Tex. July 30, 2012) (quoting *Singletary*, 798 F.2d at 821) *report and recommendation adopted,* No. 5:11-CV-L94-C, 2012 WL 3578603 (N.D. Tex. Aug. 20, 2012). "A claimant need not show that his impairment was so severe that it prevented him from working

for twelve continuous months; 'it is the impairment only which must last for a continuous period.'" *Id.*

At Step Two, the ALJ found that none of Beggs' impairments or combination of impairments were severe. (Tr. 23.)  While Beggs complains that the ALJ misread the Social Security regulations' durational requirement, it is clear that the ALJ understood such requirement.  The ALJ, after setting forth the severity standard under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), specifically stated, "Finally, the impairment or combination of impairments must meet the regulatory 'duration requirement;' that is, unless it is expected to result in death, it must have lasted or be expected to last for a continuous period of at least twelve consecutive months.  (20 CFR § 404.1509; SSR 96-3p)."  (Tr. 23.)  This is an apt description of the durational requirement.  Therefore, the ALJ did not misread or misunderstand the durational requirement and remand is not required on this basis.

Moreover, substantial evidence supports the ALJ's determination at Step Two.  Beggs argues that the ALJ misapplied the durational requirement by focusing solely on Beggs' medical history between July 1, 2012 and July 1, 2013, to the exclusion of Beggs' future prognosis beyond that twelve-month period.[3]  (Pl.'s Br. at 10–11.)  As evidence that the ALJ considered only Beggs' past medical history, Beggs points to the ALJ's conclusion that Beggs did not satisfy the durational requirement, where the ALJ stated,

> In sum, the evidence is insufficient to establish that since the alleged onset date, the claimant has had a continuous, twelve-month history (20 CFR § 404.1509; SSR 96-3p) of impairment-related functional limitation that significantly limited her ability to perform basic work activities.  20 CFR §

---

[3] While Beggs acknowledged that at the hearing before the ALJ she requested an amendment to her onset date from July 1, 2012 to December 20, 2012, she notes that the ALJ's opinion proceeded to analyze Beggs' applications from an onset date of July 1, 2012.  (Pl.'s Br. at 11, n.3.)  Beggs argues that "her cancer diagnosis and treatment were *expected* to last longer than 1 year from either onset date, irrespective of the ALJ's error in analyzing the incorrect onset date." (Pl.'s Br. at 11 n.3.)

404.1520; *Stone v. Hecker*, 752 F.2d (5th Cir. 1985). Thus, the claimant has not had a severe impairment or combination of impairments during that same period.

(Pl.'s Br. at 11 (emphasis omitted); *see* Tr. at 26.)

In support of her claim, Beggs points to evidence found in the record regarding her impairment, including: (1) her June 1, 2012 diagnosis of cervical cancer (Pl.'s Br. at 11; *see, e.g.*, Tr. 333), (2) the chemotherapy treatments she endured beginning in July 2012, during the time in which she was pregnant (Pl.'s Br. at 12; *see, e.g.*, Tr.48, 286, 299, 333), (3) the chemotherapy treatment she received between December 2012 and at least March 2013 following the birth of her son (Pl.'s Br. at 12; *see, e.g.*, Tr. 475–76[4]), (4) Beggs' hospitalization due to side effects from chemotherapy in March 2013 (Pl.'s Br. at 12; *see* Tr. 373-74, 477), and (5) the continuing diagnosis of cervical cancer by Gus Gonzalez, M.D. ("Dr. Gonzalez"), as reflected on records through June 24, 2013 (Pl.'s Br. at 12; *see, e.g.*, Tr. 472-73, 603). Additionally, Beggs points out that her medical records between March and June of 2013 do not show that her cancer was in remission. (Pl.'s Br. at 12.) Considering her "continuing diagnosis of cervical cancer," and follow-up oncologist appointment scheduled for September 2013 (Pl.'s Br. at 12; *see* Tr. at 608), Beggs maintains that "it would have been reasonable for the ALJ to conclude that her disease would be expected to last [one] year" from either her July 1, 2012 or December 20, 2012[5] onset dates. (Pl.'s Br. at 12.)

Beggs' complaint that the ALJ's determination was not supported by substantial evidence is not persuasive. Beggs demonstrates her misunderstanding of the meaning of substantial evidence by claiming error because "it would have been reasonable for the ALJ to conclude" differently. (Pl.'s Br. at 12.) A finding of no substantial evidence is not appropriate merely

---

[4] The Court notes that Beggs, in her brief, does not reference page 475 of the transcript but does reference pages 476–77. However, a review of the record reveals that Beggs most likely intended to reference pages 475-76.

[5] The Court notes that Beggs, in her brief, incorrectly references this dates as December 20, 2013.

because a viable alternative interpretation of the evidence exists; instead, such a finding is proper only when no credible medical findings or evidentiary choices support the decision. *Boyd*, 239 F.3d at 704.

Substantial evidence supports the ALJ decision at Step Two relating to both the severity of Beggs' impairments and whether such impairments met the duration requirement. First, the ALJ discussed much of the evidence from Beggs' medical records, including some of the same evidence that Beggs proffers in support of her argument. Specifically, the ALJ discussed Beggs': (1) cervical cancer diagnosis from June 1, 2012 (Tr. 24), (2) chemotherapy treatments while pregnant (Tr. 24), and (3) post-pregnancy chemotherapy treatments in early 2013 (Tr. 24). In addition, the ALJ also noted that the latest medical records, dated June 24, 2013, reflected that despite Dr. Gonzalez's assessment of cervical cancer, Beggs was "doing well" and recent scans showed "no evidence of recurrent disease." (Tr. 25; *see* Tr. 603–08).[6] In fact, the ALJ noted that on that date Dr. Gonzalez stated that Beggs' "only problem was her right knee." (Tr. 25; *see* Tr. 607.) This is substantial evidence in support of the ALJ's Step Two findings. Therefore, the ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)).

---

[6] As evidence of the harm she suffered by the ALJ's alleged error, Beggs points to the diagnosis of "[m]alignant neoplasm of exocervix," from her oncologists' notes through June 24, 2013. (Pl.'s Br. at 12; *see* Tr. 606.) However, mere diagnosis of an impairment does not establish a disabling impairment. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The Court notices that, while the June 24 oncologist notes—the latest medical evidence in the record—contain this diagnosis, on that same document the doctor wrote that Beggs was "doing quite well," suffered "only" from a knee problem, and "[f]rom a cervical standpoint [was] doing fine." (Tr. 606–08.) Additionally, Beggs complains that her September 2013 follow-up appointments could lead to a conclusion that the impairments could have been expected to last twelve months. (Pl.'s Br. at 12.) However, the doctor who initiated the follow-up appointments specified that "no labs" be done at them. (Tr. 607.) Additionally, the follow-ups were recommended on the very same page in which the doctor stated that Beggs was doing "fine" cervically. (Tr. 607.) Moreover, absent from Beggs' appeal is any evidence from her follow-up appointments showing that her cancer was causing limitations after June 24, 2013.

Additionally, Beggs argues that the ALJ erred by failing to consider Dr. Gonzalez's opinion evidence that supports the "expectation that [Beggs'] disease would continue to limit her for months," as stated in RFC questionnaires completed on December 21, 2012 and May 24, 2013. (Pl.'s Br. at 13–14; *see* Tr. 326–27, 600–01.) Beggs complains that "the ALJ had an obligation to weigh" this opinion evidence and should have given Dr. Gonzalez's opinions dispositive weight. (Pl.'s Br. at 13–14.)

In Beggs' case, because the ALJ found that Beggs was not disabled as her impairment did not satisfy the durational requirement, the ALJ ended his evaluation at Step Two and did not proceed to assess Beggs' RFC. (*See* Tr. 23–26.) Contrary to Beggs' argument, the ALJ clearly considered Dr. Gonzalez's opinion evidence in the two RFC questionnaires. (Tr. 25.) However, the ALJ noted, *inter alia*, that both of these RFC questionnaires were completed well before Dr. Gonzalez recorded his notes from Beggs' June 24, 2013 appointment, in which Dr. Gonzalez observed that Beggs was "doing well," only had a problem with her right knee, and was "doing fine" cervically. (*See* Tr. 326–27, 600–01, 606–08.) Thus, the opinion evidence from Dr. Gonzalez's RFC questionnaires does not undermine the substantial evidence supporting the ALJ's finding at Step Two that Beggs' impairments were not severe and did not satisfy the durational requirement.

### 2. Beggs' Obesity and Right Knee Injury

Beggs also complains that the ALJ erred by failing to address Beggs' obesity. (Pl.'s Br. at 14–16.) Beggs argues that, while the transcript "contains at least thirty-three separate references to [Beggs'] obesity," the ALJ's decision makes no references to it. (Pl.'s Br. at 16, (referencing Tr. 282, 299, 343, 353, 481, 485, 488, 495, 498, 514, 517, 520, 524, 527, 530, 533,

539, 543, 547, 551, 555, 559, 563, 567, 571, 579, 583, 591, 595, 604, 607, 614, 617).)[7]   Citing

two cases from district courts within the Fifth Circuit, Beggs argues, "If previous courts have

found an ALJ's passing references to obesity, alongside boilerplate language from SSR 02-01p,

to constitute insufficient analysis of obesity, then surely the complete failure to consider obesity

must, in itself, provide sufficient basis for remand." (Pl.'s Br. at 16 (citing *Moore v. Soc. Sec.*

*Admin.*, No. 1:11-cv-00135-SAA, 2012 WL 1080331, at *4–5 (N.D. Miss. Mar. 30, 2012) and

*Shoemake v. Comm'r of Soc. Sec.*, No. 2:12-CV-02743, 2013 WL 6145284, at *10–11 (W.D. La.

Nov. 21, 2013)).)

The Social Security rulings recognize that obesity, though not a listed impairment, can

reduce an individual's occupational base for work activity in combination with other elements.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(Q); SSR 02-1p, 2002 WL 34686281, at *5–7

(S.S.A. Sept. 12, 2002).  A claimant's obesity must be considered at all steps of the sequential

evaluation process.  SSR 02-1p, 2002 WL 34686281, at *3.  The ALJ must perform "an

individualized assessment of the impact of obesity on an individual's functioning when deciding

whether the impairment is severe." *Id.* at *4.

In *Moore v. Social Security Administration*, in light of evidence in the record showing

both Moore's obesity and its effect upon Moore's functioning, the ALJ found Moore to suffer

from severe impairments that included morbid obesity.  *Moore*, 2012 WL 1080331, at *1.

However, the Court noted that the ALJ failed to satisfy Social Security regulations and rulings by

failing to examine the impact of Moore's obesity on her ability to function. *Id.* at *3–5.  Since

the record contained testimony showing how Moore's obesity affected her functioning, the court

remanded the case for "the type of detailed analysis required by [SSR] 02-01p." *Id.* at *5.

---

[7] The Court notes that Beggs actually cites to thirty-four, not thirty-three, pages of the transcript that allegedly reference her obesity.

In *Shoemake*, the claimant's treating surgeon "clearly explained how Shoemake's obesity . . . caused functional limitations," and "tied specific physical limitation and restrictions to" both obesity and his other impairments. *Shoemake*, 2013 WL 6145284, at *10. The court remanded the case to the ALJ because, despite these findings, the ALJ erred by "stating that none of Shoemake's doctors 'appreciated or articulated any restrictions or limitations relative to obesity.'" *Id.*

Beggs is correct in her assertion that the ALJ did not address Beggs' obesity. Nonetheless, her case is distinguishable from the above-cited authority. Unlike in the above cases, there is only one treatment record cited by Beggs that even mentions Beggs was obese. (Tr. 282.) The other thirty-three references are merely notations of her vital signs, including her weight and BMI, at various stages of her treatment. Moreover, Beggs points to no place in the record showing how her obesity **_affected her functioning_**. Specifically, none of Beggs' doctors tied any physical limitations to Beggs' obesity or even explained how the obesity caused her any limitations. *See, e.g., Webb v. Astrue*, No. 4:08-CV-747-Y, 2010 WL 1644898, at *10 (N.D. Tex. March 2, 2010); *Campos v. Astrue*, No. 5:08-CV-115-C, 2009 WL 1586194, at *3–4 (N.D. Tex. June 8, 2009); *Crossley v. Astrue*, No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (N.D. Tex. Dec. 5, 2008) ("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that her obesity actually results in these limitations or any further limitations beyond the sedentary work level found by the ALJ.") Moreover, as stated above, the mere diagnosis of an impairment does not establish a disabling impairment or even a significant impact on a claimant's RFC. *See Hames*, 707 F.2d at 165. Thus, even assuming that the ALJ's failure to address Beggs' obesity constitutes noncompliance with SSR 02-01p, Beggs has not demonstrated prejudice by such failure. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.

1988) (stating that the court will not vacate a judgment unless the substantial rights of a party

have been affected). Thus, remand is not required.

### 2.     Right Knee Injury

Beggs also complains that the ALJ failed to consider the injury to Beggs' right knee.

(Pl.'s Br. 16–17.)  Beggs argues that the ALJ, while mentioning the knee injury merely four

times,[8] "failed to consider the severity" of the knee injury on its own or in conjunction with

Beggs' obesity and/or cervical cancer. *Id.*  In addition to the evidence from the record that the

ALJ noted, Beggs points out Dr. Gonzalez's observations that (1) Beggs' "knee was tender to

touch," (2) Beggs "walked with a limp," (3) Beggs' knee "appeared ready to 'give out,'" and (4)

Beggs would be "referred . . . to an orthopedist for further evaluation."  (Pl.'s Br. at 16; *see* Tr.

607.)

Regarding the injury to Beggs' right knee, the ALJ noted each of the following: (1) the

injury reportedly occurred when Beggs fell in June 2013 due to dizziness, (2) Dr. Gonzalez

"opined that [Beggs'] only problem was her right knee," and (3) that the knee was causing Beggs

pain.  (Tr. 23, 25; *see* Tr. 606–07.)  Additionally, the ALJ cited the following notes from Dr.

Gonzalez's June 24, 2013 report: (1) Beggs "reported normal gait" and no sensory problems, (2)

Beggs "walked without assistance," (3) a physical examination of Beggs showed "her to be free

from musculoskeletal tenderness, swelling, and weakness, with no muscular atrophy and normal

range of motion in all joints," and (4) Beggs had no motor deficits.  (Tr. 25; *see* 606–07.)  In

light of this evidence, the Court finds that, despite Beggs' complaints, the ALJ was clearly aware

of the knee injury when he rendered his decision and properly considered the injury in assessing

---

[8] Though Beggs claims four references, the Court finds more references to the knee injury and its effects within the ALJ's decision, as is discussed in the next paragraph.

Beggs' disability.  Because such decision was supported by substantial evidence, remand is not required.

Furthermore, the Court finds that, even if the ALJ erred by failing to properly consider the knee injury, Beggs has not shown prejudice.  While Beggs points to several pieces of evidence in support of her claim, the Court finds that none of this evidence might have led to a different decision.  To begin with, the fact that Beggs' knee was tender to the touch is not inconsistent with the statement, recorded by Dr. Gonzalez and noted by the ALJ, that Beggs had a "problem" with her right knee.  (*See* Tr. 25, 607.)  Second, the evidence regarding Beggs' limp is inconsistent because, while Dr. Gonzalez recorded that Beggs "walk[ed] with a slight limp," the records from that same report also note that Beggs had a "normal gait" and walked without assistance.  (Tr. 607.)  Third, Beggs mischaracterized the evidence that Beggs' knee was "ready to 'give out.'"  (Pl.'s Br. at 16.)  This claim was not made by a doctor, but was recorded by Dr. Gonzalez as a claim made by Beggs.  (Tr. 607 ("It does not lock upon [sic] exam but considering [how] she talks [about] it, it seems like it is about to give out.").)  Fourth, despite Beggs' referral to an orthopedist for follow-up on the knee, Beggs presents no records from any such follow-up or any other evidence in support of her claim of a severe knee impairment.  Therefore, because Beggs does not show that evidence was ignored or that additional evidence would or could have been produced that might have led to a different conclusion, remand is not required.

### B.    Duty to Develop the Record

Beggs also argues that the ALJ failed in his "duty to develop a full and fair record with respect to all of [Beggs'] impairments."  (Pl.'s Br. 17–19, citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).)  In support of her argument, Beggs points to the following: (1) the ALJ's "failure to consider [Beggs'] obesity," (2) the possibility that the record did not contain sufficient

evidence relating to Beggs' right knee injury, and (3) fact that the medical documents in the record "do not state that [Beggs' cervical cancer] was in remission." (Pl.'s Br. at 18–19.) Beggs claims that the ALJ only kept the record open for additional evidence for thirty days following the hearing of July 26, 2013, which did not allow sufficient time for the ALJ to receive and consider evidence from Beggs' follow-up oncology appointments of September 2013 and her referral to an orthopedist for additional assessment of her right knee. (Pl.'s Br. at 18-19; *see* Tr. 31, 52–53, 607.) Beggs argues that "the ALJ rushed to judgment" by choosing "not [to] wait to receive scans in September 2013 that might have indicated whether there was a reduction in disease mass sufficient to completely discontinue her cancer treatment." (Pl.'s Br. at 19.) Instead, Beggs argues that the ALJ could have developed a "more full and fair record" regarding Beggs' cervical cancer by obtaining further exams, opinions, or even evidence from future exams through "at least October of 2013." *Id.*

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Newton*, 209 F.3d at 458; *Ripley*, 67 F.3d at 557. When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision, and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220). "To show such prejudice a Plaintiff must present more than mere speculation." *Dale v. Astrue*, No. 83-3542, 2012 WL 2864403, at *7 (July 11, 2012).

Beggs' claim that the ALJ failed to adequately develop the record fails. As to Beggs' obesity, as discussed above, Beggs fails to show that she could or would have adduced evidence relating to her obesity that might have altered the result. Thus, Beggs fails to show that the ALJ erred in his duty to develop the record as to Beggs' obesity.

Beggs similarly fails to demonstrate prejudice by the ALJ's alleged failure to develop the record regarding the injury to her right knee. As noted above, the ALJ properly considered the evidence related to Beggs' knee injury. Nonetheless, Beggs fails to show that she "could and would" have provided evidence—such as records from an orthopedic doctor's examination—that might have changed the ALJ's decision.

Beggs' argument regarding the ALJ's alleged failure to develop the record regarding her cervical cancer is similarly unavailing. First, Beggs complains that the thirty days given by the ALJ for submitting medical records was insufficient. (Pl.'s Br. at 18.) However, the ALJ gave Beggs more than twice the amount of time that her own attorney requested at the hearing for making such submissions. (Tr. 52–53.) Second, while the record does not state that Beggs' cancer was in remission, Beggs again fails to show that she would or could have produced evidence that would have altered the ALJ's decision. As with all of Beggs' alleged impairments, the record contains sufficient medical and non-medical evidence upon which the ALJ based his determination. Because Beggs fails to show that she was prejudiced by the ALJ's alleged failure to satisfy his duty to develop the record, remand is not required.

### C.    Credibility

Beggs finally argues that the ALJ's evaluation of Beggs' credibility was not supported by substantial evidence. (Pl.'s Br. at 19–21.) Specifically, Beggs complains that the ALJ failed to cite medical evidence in the record in support of "rejecting" Beggs' assertions of pain. (Tr. at

20.) Beggs argues, "If the ALJ chose to reject Plaintiff's subjective complaints of pain and other discomforts, the ALJ had an obligation to point to conflicting medical evidence or other inconsistent statements that showed her not to be credible, and the ALJ failed to do so." (*Id.* at 21 (citations omitted).) In addition, Beggs claims that the ALJ erred by failing to discuss Beggs' assertions of the pain and discomfort that she suffered as a result of the chemotherapy and radiation treatment, which included: (1) an inability to sleep due to pain; (2) the need to take hydrocodone for the pain; (3) experiencing fatigue, diarrhea, dizziness, and weakness; and (4) the inability to bathe herself or care for her children without assistance. (*Id.* at 20–21.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms such as pain. 20 C.F.R. §§ 404.1529, 416.920; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *1. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. §§ 404.1529, 416.929.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own

observations.  SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995).  When assessing the

credibility of an individual's statements, the ALJ considers, in addition to the objective medical

evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency,

and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate

the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the

claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than

medication, which the claimant receives or has received for relief of pain or other symptoms; (6)

any measures other than treatment the claimant uses or has used to relieve pain or other

symptoms; and  (7)  any other factors concerning the claimant's functional capacity, limitations

and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c), 416.920(c); SSR 96-

7p, 1996 WL 374186, at *3.  An ALJ's unfavorable credibility evaluation will not be upheld on

judicial review where the uncontroverted medical evidence shows a basis for the claimant's

complaints unless the ALJ weighs the objective medical evidence and articulates reasons for

discrediting the claimant's subjective complaints.  *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir.

1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

　　　　Beggs' complaint that the ALJ erred by failing to cite medical evidence when he

"rejected" her pain assertions is unavailing.   First, the ALJ did not completely reject Beggs'

assertions of pain.  In evaluating Beggs' credibility, the ALJ concluded:

> After considering the evidence of record, the undersigned finds that the
> claimant's medically determinable impairments could have been reasonably
> expected to produce the alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting effects of these symptoms are
> not credible to the extent they are inconsistent with the finding that the claimant
> has no severe impairment or combination of impairments. . . .
>
> 　　. . . .

18

In reaching this conclusion, the undersigned has considered all symptoms
and the extent to which these symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence, based on the
requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p.

(Tr. 24, 25.)  Clearly, the ALJ did not reject Beggs' assertions of pain, as he found that Beggs'

impairments "could have reasonably caused" the alleged pain.  Instead, the ALJ found that

Beggs' descriptions of her pain's intensity, persistence, and limiting effects to be inconsistent

with the ALJ's finding that Beggs had no severe impairment or combination of impairments.

Second, the Court finds that the ALJ properly cited medical evidence in support of his

credibility finding and that this constitutes substantial evidence in support of the ALJ's

credibility finding.  Within the context of discussing Beggs' medical history, the ALJ described

various observations that Dr. Gonzalez made concerning Beggs' post-chemotherapy condition.

Specifically, the ALJ, *inter alia*, noted:

On April 5, 2013, Dr. Gonzalez noted that the claimant had completed her
definitive radiation and chemotherapy course on time.  The claimant reported
feeling much better since stopping her chemotherapy, and she reported normal
gait and denied sensory problems[,] headache, blurred vision, focal weakness,
and/or numbness, excessive fatigue, weight loss, visual difficulties or problems
with hearing, chest pain, and joint pain.  Physical examination showed the
claimant's normal range of motion in all joints, in which she also had no
tenderness or swelling.  She had normal gait, walked without assistance, and had
no muscular atrophy or sensory deficit.

(Tr. 24–25 (citations omitted); *see* Tr. 472–74.)  Later, the ALJ described the following notes

from Dr. Gonzalez, which discussed Beggs' condition after both chemotherapy and radiation

were completed:

On June 24, 2013, Dr. Gonzalez[] assessed cervical cancer but stated that
the claimant was "doing well," noting that recent computed tomography (CT)
scan had shown no evidence of recurrent disease.  Dr. Gonzalez stated that the
claimant had done "fairly well" following her course of radiation therapy and
chemotherapy, and he opined that the claimant's only problem was her right knee,
noting the claimant's report of having recently fallen on that joint, which was

19

causing her pain and distress. The claimant reported right knee pain, but denied nausea, vomiting, diarrhea, fevers, chills, headache, blurred vision, and focal weakness. She reported normal gait and denied any sensory problems. Physical examination showed her to be free from musculoskeletal tenderness, swelling, and weakness, with no muscular atrophy and normal range of motion in all joints. The claimant walked without assistance and with normal gait, and she had no sensory or motor deficits. . . .

(Tr. 25 (citations omitted); *see* Tr. 606–08.) These passages, when considered in contrast with Beggs' own testimony about her pain and discomfort (see below), provide medical evidence in support of the ALJ's credibility findings. Thus, even though the ALJ did not, as Beggs claims, completely reject Beggs' assertions of pain and discomfort, the ALJ clearly cited medical evidence in support of his findings that her statements were not fully credible as to the intensity, persistence, and limiting effect of her pain and discomfort.

Similarly, the Court finds Beggs' claim that the ALJ failed to discuss Beggs' "multiple assertions of pain and other discomforts" to be unavailing. Despite Beggs' complaint to the contrary, the ALJ described Beggs' assertions of pain and discomfort in his decision as follows:

[Beggs] underwent chemotherapy from November 2012 until completion in May 2013. Although she had been undergoing chemotherapy and radiation therapy concurrently, she is not currently undergoing radiation treatment, because her doctors want to assess the effectiveness of the chemotherapy. In June 2013, she fell down due to her dizziness, injuring her knee. She experiences episodes of pain at a level of "nine["] (on a one-to-ten scale of severity) that sometimes last for up to two weeks, for which she takes eight to ten Hydrocodone tablets per day. She also takes medication for nausea, but that tends to worsen her dizziness. She typically gets only about four hours of sleep per night.

With respect to functional limitations, the claimant stated that she currently feels dizziness when she stands. On a "good day," she is able to stand for approximately thirty minutes at a time; however, on a "bad day," she can stand for only fifteen minutes secondary to pain and a lack of energy. On those days, she typically lies down for most of the day, as she feels dizzy and nauseated when she gets up. She can walk only about halfway to her door, after which she must stop and take a breath. Her sitting is limited by her pain. She does not know how much weight she can lift and carry; however, it is difficult[] for her to lift her baby. Regarding her daily activities, she stated that she has been living in the apartment of a friend since she began her chemotherapy in November 2012. She

does not have a driver's license and gets where she needs to go using medical transportation and—previously—through rides from her sister. At home, she attends to the care and feeding of her children with help from her friend. She does not do any household chores and also requires help showering due to her dizziness, though she is able to brush her teeth and get dressed by herself. She does not do any grocery shopping and also no longer takes her children to the park, as she used to do with her four-year-old child before she contracted her illness. In general, it now takes her longer to perform normal daily activities, and she is unable to play with her children.

(Tr. 23–24; *see* Tr. 33–55.)

The Court notes that the ALJ made at least three specific references to Beggs' testimony about her pain. (*See* Tr. 23.) The ALJ also described Beggs' testimony about the medicine she took for both nausea and pain, even noting the number of Hydrocodone pills that Beggs took each day during her episodes of high pain levels. (*See* Tr. 23.) Similarly, the ALJ discussed various discomforts—including dizziness, nausea, and sleeping problems—that Beggs claimed to be experiencing. (*See* Tr. 23.) Additionally, the ALJ noted Beggs' difficulties in conducting a wide variety of daily activities, including standing, sitting, walking, and performing personal care. (*See* Tr. 23–24.) Based on the ALJ's findings that Beggs' statements regarding the intensity, persistence, and limiting effects of her pain and discomfort not to be credible insofar as they were inconsistent with the medical evidence in the record and that Beggs had no severe impairment or combination of impairments, it is clear that the ALJ adequately understood and addressed Beggs' assertions of pain and discomfort. Because the ALJ did not err in evaluating Beggs' credibility, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute* 28 U.S.C. § 636(b)(1) (extending the deadline to file objections from ten to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 14, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is **REFERRED** to the docket of the United States District Judge.

SIGNED August 31, 2015.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE